UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

SHERON P. o/b/o S.K.C.,[1]

                              Plaintiff,

v.

ACTING COMMISSIONER OF SOCIAL
SECURITY,

                              Defendant.
_____

DECISION AND ORDER

1:21-cv-00445 (JJM)

        This is an action brought pursuant to 42 U.S.C. §1383(c)(3) to review the final

determination of the Commissioner of Social Security that S.K.C., a minor, was not entitled to

Supplemental Security income ("SSI"). Before the court are the parties' motions for judgment on

the pleadings [5, 6].[2]   The parties have consented to my jurisdiction [8].  Having reviewed their

submissions [5, 6, 7], for the following reasons plaintiff's motion [5] is granted and the

Commissioner's motion [6] is denied.

### BACKGROUND

        I presume the parties' familiarity with the 363-page administrative record [4].

Further, the parties have comprehensively set forth in their papers plaintiff's treatment and other

---

[1]        In accordance with the guidance from the Committee on Court Administration and Case
Management of the Judicial Conference of the United States, which was adopted by the Western District
of New York on November 18, 2020 in order to better protect personal and medical information of non-
governmental parties, this Decision and Order will identify the plaintiff by first name and last initial.

[2]        Bracketed references are to the CM/ECF docket entries. Page references to the administrative
record are to the Bates numbering.  All other page references are to the CM/ECF pagination (upper right
corner of the page).

records and the relevant medical evidence. Accordingly, I reference below only those facts

necessary to explain my decision.

Plaintiff's mother filed an application for benefits on his behalf in September

2018, when plaintiff was seven years old (he was born in April 2011), alleging a disability

beginning on December 8, 2015, due to a speech and learning disability. Administrative Record

[4] at 15, 16, 207.  An administrative hearing was held on July 10, 2020 before Administrative

Law Judge ("ALJ") Lori Romeo.  Id. at 27-57 (transcript of hearing).  At that time, plaintiff was

nine years old.  Id. at 39.  Plaintiff was represented by an attorney, but did not testify.  His

mother testified in support of his claim.  Id. at 39-55.

On September 17, 2020, ALJ Romeo issued a decision finding that plaintiff was

not disabled as defined in the Social Security Act since the date of his application. Id. at 22.  To

reach that determination, ALJ Romeo found that plaintiff's severe impairment was "learning

disabled".  Id. at 16. He also found that plaintiff's severe impairments did not meet the elements

of a listed impairment, nor were they functionally equivalent to the severity of the listings.  Id. at

16-22.  Thereafter, this action ensued.

## DISCUSSION

In seeking remand for further administrative proceedings, plaintiff argues that

ALJ Romeo failed to consider oppositional defiant disorder ("ODD") as a severe impairment at

step 2 of her analysis, or to consider the impact of that impairment when evaluating the

functional domains of interacting and relating with others, and caring for one's self.  Plaintiff's

Memorandum of Law [5-1] at 12.  In addition, plaintiff argues that ALJ Romeo failed to

adequately explain her reasoning in finding that the plaintiff had "less than marked" limitations

in those domains, given the evidence in the record.  *See* id. at 12-17.

-2-

The Commissioner responds by arguing that any error at step 2 of the analysis was harmless because the ALJ "continued with the sequential evaluation where [s]he discussed S.K.C.'s behavior throughout the relevant period". Commissioner's Brief [6-1] at 9. Further, the Commissioner argues that ALJ Romeo's findings concerning plaintiff's limitations in the functional areas in question were supported by substantial evidence. Id. at 13-18. The Commissioner contends that "[p]laintiff's erroneous contention that the ALJ did not properly evaluate the evidence is tantamount to an invitation for this Court to reweigh the evidence, which is beyond the scope of the deferential substantial evidence standard". Id. at 18.

**A.    Standard of Review**

"A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by 'substantial evidence' or if the decision is based on legal error." Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (*quoting* 42 U.S.C. §405(g)). Substantial evidence is that which a "reasonable mind might accept as adequate to support a conclusion". Consolidated Edison Co. of New York. Inc. v. NLRB, 305 U.S. 197, 229 (1938). "For SSI applications, the relevant period is between the date of the application and the date of the ALJ's decision". Leisten v. Astrue, 2010 WL 1133246, *1, n. 2 (W.D.N.Y. 2010). Accordingly, the issue here is whether plaintiff was disabled between September 21, 2018 and September 17, 2020, the date of ALJ Romeo's decision.

**B.    The Infant Disability Standard**

A claimant under 18 years of age is "disabled" under the Social Security Act if he has a medically determinable physical or mental impairment (or combination of impairments) that results in "marked and severe functional limitations . . . which has lasted or can be expected to last for a continuous period of not less than 12 months". 42 U.S.C. §1382c(a)(3)(C). Under the

applicable regulations, plaintiff must show that he is not working, that he has a "severe"
impairment or combination of impairments, and that the impairment or combination of
impairments is of listing-level severity - *i.e.*, medically or functionally equal to the severity of a
listed impairment. 20 C.F.R. §§416.924(a)-(d).

Functional equivalence of limitations in children is evaluated in six domains:
acquiring and using information; attending and completing tasks; interacting and relating with
others; moving about and manipulating objects; caring for oneself; and health and physical well-
being.  20 C.F.R. §§416.926a(b)(1)(i)-(vi).  Marked limitations in two domains of functioning or
an extreme limitation in one domain constitutes functional equivalence to a listed impairment.
Id. §416.926a(d). ALJ Romeo found that plaintiff had a marked limitation in the domain of
attending and completing tasks.  Administrative Record [4] at 20.  Plaintiff challenges the ALJ's
analysis in two domains in which she found that plaintiff had a "less than marked" limitation:
interacting and relating with others; and caring for oneself.  *See* Plaintiff's Memorandum of Law
[5-1] at 12; Administrative Record [4] at 20-21.

I agree with the Commissioner that a failure to include a determinable impairment
at Step 2 can be harmless where the ALJ continues to assess all the evidence of plaintiff's
limitations in subsequent steps.    However, I agree with plaintiff that ALJ Romeo failed to do
that.  Her error cannot, therefore, be considered harmless.  *See* Bradley o/b/o C.B. v. Berryhill,
2017 WL 8287642, *2 (W.D.N.Y. 2017) ("an ALJ's Step 2 determination as to the severity of
certain conditions can amount to harmless error, but not when an ALJ fails to address a condition
in its entirety").  Accordingly, this claim must be remanded.

The Social Security Administration's regulations discuss the functional elements
of each domain and describe the abilities assessed under each to determine if a child has a

marked or extreme limitation, and provides some examples of limitations under each domain. *See* 20 C.F.R. §416.926a.  A "marked" limitation in any domain exists when a claimant's "impairment(s) interferes seriously with your ability to independently initiate, sustain, or complete activities."  Id. §416.926a(e)(2)(i).

The domain of interacting and relating with others concerns how well a child is able to "initiate and sustain emotional connections with others, develop and use the language of your community, cooperate with others, comply with rules, respond to criticism, and respect and take care of the possessions of others".  Id. §416.926a(i).  Generally, this domain of functioning includes "speak[ing] intelligibly and fluently so that others can understand you" and "respond[ing] to others appropriately and meaningfully".  Id. §416.926a(i)(1)(iii).  "In addition, when interacting with a parent, teacher, or other adult, the child needs to convey respect for the adult."  SSR 09-5p, Title XVI: Determining Childhood Disability - The Functional Equivalence Domain of "Interacting and Relating with Others", 2009 WL 396026, *3 (2009).  Children aged 6 to 12 "should begin to understand how to work in groups to create projects and solve problems".  20 C.F.R. §416.926a(i)(2)(iv).  Examples of limited functioning in this domain include "difficulty communicating with others; e.g., in using verbal and nonverbal skills to express yourself, carrying on a conversation, or in asking others for assistance" and "difficulty cooperating with others".  Id. §416.926a(i)(3).

The domain of caring for yourself concerns how well a child is able to "maintain a healthy emotional and physical state, including how well you get your physical and emotional wants and needs met in appropriate ways; how you cope with stress and changes in your environment; and whether you take care of your own health, possessions, and living area".  Id. §416.926a(k).  Generally, this domain of functioning includes "employ[ing] effective coping

strategies, appropriate to your age, to identify and regulate your feelings, thoughts, urges, and intentions".   Id. §416.926a(k)(1)(ii).  Children aged 6 to 12 should "begin to develop understanding of what is . . . acceptable and unacceptable behavior.  You should begin to demonstrate consistent control over your behavior, and you should be able to avoid behaviors that are unsafe or otherwise not good for you".  Id. §416.926a(k)(2)(iv).  Examples of limited functioning in this domain could include "express[ing] frustration by destroying school materials" or "hav[ing] problems managing anger".  SSR 09-7p, Title XVI: Determining Childhood Disability – The Functional Equivalence Domain of "Caring for Yourself", 74 FR 7521-01, 7523 (2009).

### C.    ALJ Romeo's Analysis of Plaintiff's Functional Limitations is Not Supported by Substantial Evidence

"Although we do not require that, in rejecting a claim of disability, an ALJ must reconcile explicitly every conflicting shred of medical testimony . . . we cannot accept an unreasoned rejection of all the medical evidence in a claimant's favor".  Fiorello v. Heckler, 725 F.2d 174, 176 (2d Cir. 1983).  Furthermore, an ALJ may not "cherry pick" only the evidence that supports his findings while ignoring conflicting evidence from the same source.  Carisma A. o/b/o T.A. v. Commissioner, 516 F.Supp.3d 301, 306 (W.D.N.Y. 2021).  " 'Cherry picking' can indicate a serious misreading of evidence, failure to comply with the requirement that all evidence be taken into account, or both".  Younes v. Colvin, 2015 WL 1524417, *8 (N.D.N.Y. 2015).  Such a "selective reading and mischaracterization of the record does not constitute substantial evidence".  Shaine J. v. Commissioner, 2020 WL 6887622, *4 (W.D.N.Y. 2020).

"It is well-recognized that the ALJ need not adopt any opinion in its entirety, but rather is entitled to weigh all the evidence and adopt the limitations supported by the evidence".

Butler v. Commissioner of Social Security, 2017 WL 2834482, *8 (N.D.N.Y. 2017).  However, when an ALJ rejects an opinion from a medical source concerning plaintiff's functional abilities, or incorporates some portions of a functional assessment but not others, he or she must explain why the opinions were not adopted.  "The plaintiff here is entitled to know why the ALJ chose to disregard the portions of the medical opinions that were beneficial to her application for benefits."  Dioguardi v. Commissioner of Social Security, 445 F.Supp.2d 288, 297 (W.D.N.Y. 2006).

I disagree with the Commissioner that this amounts to simply re-weighing the evidence.  See Commissioner's Brief [6-1] at 18.  "By highlighting this issue, the Court does not intend to supplant its interpretation of the record for the ALJ's.  While the Court should not engage in weighing the credibility of evidence or review the underlying matter de novo, the court is required to ensure that the ALJ has satisfied his legal duty."  Bradley o/b/o Y.T.B. v Berryhill, 305 F.Supp.3d 460, 464 (W.D.N.Y. 2018).  For the reasons stated below, ALJ Romeo did not satisfy that duty.

ALJ Romeo found that the Teacher Questionnaire completed by plaintiff's ELA and math teacher, Amber Carter, on June 3, 2020 was "persuasive":

> "I find the teacher questionnaire submitted by Ms. Carter to be persuasive. . . . I note that Ms. Carter was able to observe the claimant for over 7 months.  In addition, as generally discussed above, Ms. Carter indicated that the claimant has some problems in a majority of domains, but few serious, very serious, or extreme limitations.  The questionnaire is also consistent with the record as a whole, including with education records".

Administrative Record [4] at 22, 333-40.  ALJ Romeo relied primarily upon Ms. Carter's evaluation to support her finding that plaintiff had a "marked limitation in attending and completing tasks":

> "Ms. Carter noted that the claimant has three serious problems and
> two very serious problems out of thirteen areas in this domain,
> which were all related to staying on task, completing work, and
> working on his own".

<u>Id.</u> at 20.

ALJ Romeo also relied upon Ms. Carter's questionnaire to support her findings

that plaintiff had "less than marked" limitations in interacting with others and caring for himself.

I address each domain below.

**1. <u>Interacting with Others</u>**

With respect to interacting with others, ALJ Romeo reasoned:

> "Ms. Carter noted that the claimant has two very serious problems
> in this domain out of thirteen sub groups, including expressing
> anger appropriately, and obeying adults.  Ms. Carter noted that the
> claimant is able to take breaks when he became frustrated and is
> removed from class if his behavior became significant.  Ms. Carter
> further noted that the claimant has difficulty expressing his
> feelings appropriately with adults and is at time disrespectful and
> talked back to adults".

<u>Id.</u> at 20-21.  As an initial matter, I disagree with the ALJ's suggestion that the number of

"serious" or "very serious" problems noted in a teacher questionnaire is determinative to her

analysis.  A plaintiff may have a "marked" limitation when his or her "impairment(s) limits only

one activity".  20 C.F.R. § 416.926a(e)(2)(i).  Beyond this, however, I agree with plaintiff that

the ALJ appeared to ignore the additional evidence in the record relevant to this functional

domain.  Plaintiff's Memorandum [5-1] at 14-16.  Moreover, ALJ Romeo appears to minimize

Ms. Carter's comments that could support a greater degree of limitation.

ALJ Romeo does not discuss any of the additional information relevant to this

domain that is included in plaintiff's 2020 Individualized Education Program ("IEP") and

attributed to his general education teacher, Alycia Manuel, or his occupational therapist.

*Compare* Administrative Record [4] at 20-22 *to* id. at 353-54.  She cites to the 2020 IEP only

with respect to results of IQ and other testing, without any significant functional analysis:

> "Additional educational records reflect that the claimant was
> diagnosed with a learning disability for educational purposes.  It
> was noted that the claimant's achievement scores indicated
> problems with letter identification, passage comprehension,
> reading, and spelling.  I was noted that he had a full scale IQ of 93,
> and that he was below average with respect to manual dexterity.
> The claimant was also noted to be distracted."

 Administrative Record [4] at 20; *see also* id. at 21 (in the context of discussing Dr. Fabiano's

report, noting "claimant had full scale IQ scores of 88 and 83").

ALJ Romeo's failure to discuss the information in the IEP concerning plaintiff's

functional abilities was an error.  "An IEP is a critical piece of evidence regarding a child's

functional capabilities, and the failure to address it is error".  Bradley o/b/o C.B. v. Berryhill,

2017 WL 8287642, *2 (W.D.N.Y. 2017).  For example, the IEP states that "Ms. Manuel reports

that [plaintiff] demonstrates poor work ethic, does not get along very well with others and prefers

to be alone a lot".  Administrative Record [4] at 354.  In addition, testing revealed that plaintiff

"never works as part of a team and never handles frustration without outbursts.  [Plaintiff] is

reported to always look around the room rather than at the person speaking or at the board where

instruction is.  Ms. Manuel reports, [plaintiff] always makes unusual noises to himself, always is

distressed by accidental touch of peers, fidgets when seated and slumps over his desk/or holds

his head up when seated."  Id.  It is not apparent from ALJ Romeo's analysis that she considered

this information in making her findings.

Other inconsistencies in ALJ Romeo's analysis suggest that she mischaracterized

and cherry-picked the record in order to support her conclusion.  For example, she states that Ms.

Carter  "noted that the claimant . . . is at times disrespectful and talked back to adults".  Id. at 21.

In fact, Ms. Carter stated in her questionnaire that plaintiff "often becomes disrespectful and talks back to adults". Id. at 336 (emphasis added). Further, although ALJ Romeo noted that Ms. Carter indicated plaintiff had a "very serious" problem expressing anger and respecting/obeying adults (id. at 20), she did not acknowledge that Ms. Carter also stated plaintiff exhibited these problems "daily" and "hourly", respectively. Ms. Carter's statements indicate that plaintiff exhibited this issue far more frequently than "at times". The true frequency that plaintiff exhibited these "very serious problem[s]" certainly impacts his overall functioning in this domain. ALJ Romeo's analysis, however, offers no clues whether she took the frequency of these issues into account.

Finally, ALJ Romeo did not explain why Ms. Carter's opinions in this domain warranted a finding of less than marked limitations, where in the section concerning attending and completing tasks, she appeared to rely upon Ms. Carter's opinion to support a finding of "marked" limitations. Since ALJ Romeo found Ms. Carter's opinions "persuasive", plaintiff was entitled to know why ALJ Romeo credited Ms. Carter's opinions in one domain, but appeared to weigh them differently with respect to another. Dioguardi, supra.

Given these issues, ALJ Romeo has failed to "construct an accurate and logical bridge between [her] recitation of the facts and the conclusions [she] reached". Lopez obo Y.T. v. Commissioner of Social Security, 2020 WL 4504987, *2 (W.D.N.Y. 2020).

## 2.  **Caring for Himself**

ALJ Romeo's analysis of plaintiff's limitations in the functional domain of caring for himself is similarly deficient. She noted that Ms. Carter assessed plaintiff with "two serious problems and two very serious problem[s] in this domain out of ten subgroups", but failed to

note that three of these four problems occurred "daily" and did not discuss how, or whether, the frequency of these issues affected her analysis.  Id. at 21, 338. In addition, ALJ Romeo did not address Ms. Carter's comment that plaintiff "gets into 'moods' where he becomes unavailable for learning" or that he "is working on learning appropriate calming strategies and appropriately responding to his negative attitude".  Id.  She also did not acknowledge the information in the 2020 IEP relevant to this domain.  For example, the occupational therapist stated that, per the "sensory report", plaintiff "never handles frustration without outbursts".  In addition, the 2020 IEP states that plaintiff "works best when given breaks during lessons or activities in the classroom.  If [plaintiff] is not given a break, in 3 out of 5 times, he will refuse to work or 'shut down' during lessons".  Id. at 354.  Although ALJ Romeo was not required to credit this information, she was required to consider it and to explain how it supports her conclusion that plaintiff's limitation in this functional domain was less than marked.  Lopez, supra (the ALJ is required to "construct an accurate and logical bridge between his recitation of the facts and the conclusions he reached").

Finally, as above with respect to the domain of interacting with others, ALJ Romeo did not explain why Ms. Carter's opinions in this domain warranted a finding of "less than marked" limitations, where in the section concerning attending and completing tasks, she appeared to rely upon Ms. Carter's opinion to support a finding of "marked" limitations.  Given that ALJ Romeo found Ms. Carter's opinions "persuasive", plaintiff was entitled to know why ALJ Romeo credited Ms. Carter's opinions in one domain, but appeared to weight them differently with respect to another.  Dioguardi, supra.

Although ALJ Romeo is not required to credit evidence in the record suggesting more significant functional limitations, plaintiff is entitled to know why she rejected it.   Here, ALJ Romeo's analysis fell short of this standard and remand is required:

> "[t]his Court cannot say that the evidence in the record as a whole definitively supports marked limitations, but the ALJ failed to provide the requisite explanation to enable review of whether her finding in the domains was supported by substantial evidence."

Hicks o/b/o A.D.H. v Commissioner, 2020 WL 4061488, *6 (W.D.N.Y. 2020).  Upon remand, "the ALJ must revisit the relevant domains of functioning . . . and render a new determination. In [her] new decision, the ALJ must justify any determination that claimant's impairments do not entitle him to benefits with sufficient specificity to permit meaningful review."  Bradley o/b/o Y.T.B. v. Berryhill, 305 F.Supp.3d 460, 464 (W.D.N.Y. 2018).

Finally, ALJ Romeo's errors cannot be viewed as harmless on this record. Plaintiff would be found disabled for purposes of social security upon a finding of "marked" limitations in two functional areas.  20 C.F.R. § 416.926a(a).  ALJ Romeo has already found that plaintiff had "marked" limitations in the domain of attending and completing tasks. Administrative Record [4] at 20.  Therefore, if, upon consideration of the record evidence outlined above, ALJ Romeo were to find plaintiff has a marked disability in just one additional functional domain, a finding of disability would be compulsory.  Jill A. o/b/o J.S.E.W., 2021 WL 3513828, *3 (W.D.N.Y. 2021).  Accordingly, ALJ Romeo's errors were not harmless.

Because remand is required, I do not reach plaintiff's remaining arguments.  *See* Shaine J. v. Commissioner, 2020 WL 68887622, *5 (W.D.N.Y. 2020).

## CONCLUSION

For the reasons stated above, plaintiff's motion [5] is granted and the

Commissioner's motion [6] is denied.

**SO ORDERED**.

Dated: July 12, 2023

                                  /s/ _____

                                    JEREMIAH J. MCCARTHY
                                  United States Magistrate Judge